**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 03 2014

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARY DAVIS, on behalf of Herself
and all others similarly situated                                    PLAINTIFF

V.                              CASE NO. 4:14cv640-KGB

UNUM LIFE INSURANCE COMPANY OF AMERICA                        DEFENDANT

This case assigned to District Judge _Baker_
and to Magistrate Judge _Young_

**NOTICE OF REMOVAL**

Comes now Defendant, Unum Life Insurance Company of America, and for its

removal of this action pursuant to 28 U.S.C. § 1441, et seq., states:

    1.    On or about October 10, 2014, a civil action was commenced against

Defendant in the Circuit Court of Pulaski County, Arkansas, Civil Division – 6th,

styled <u>Mary Davis, on behalf of Herself and all others similarly situated v. Unum Life</u>

<u>Insurance Company of America</u>, Case No. 60CV-14-3910.

    2.    Defendant, through its agent for service, Corporation Service Company,

received service of copies of the Summons and Complaint in this action on October

15, 2014.  Copies of the Summons and Complaint, together with all attachments,

served on Defendant are attached hereto.

    3.    The pleadings and process which are referred to in the preceding

paragraph constitute the only process, pleadings, orders, or other filings in the Pulaski

County Circuit Court action.

    4.    Plaintiff is a resident and citizen of the State of Arkansas.

5.      Defendant is a corporation incorporated in a state other than Arkansas. It has its principal place of business in a state other than Arkansas.  It is a citizen and resident of a state other than Arkansas.

6.      There is complete diversity of citizenship between Plaintiff and Defendant.

7.      The amount in controversy exceeds $75,000.  Plaintiff seeks back benefits, current benefits, future benefits, attorney's fees, statutory penalties, and punitive damages exceeding $500,000.

8.      This Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1332.

9.      This Court has removal jurisdiction under 28 U.S.C. § 1441(a).

10.     This Notice of Removal is filed within thirty days of the service of the Complaint and Summons on Defendant.  The action is therefore timely removed pursuant to 28 U.S.C. § 1446.

11.     Defendant has this date given written notice of the filing of this notice to Plaintiff as required by 28 U.S.C. § 1446(d) and to the Circuit Clerk of Pulaski County, Arkansas, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant requests that this action proceed in this Court on the basis of this removal, that the Court assume jurisdiction of this case through resolution, and for such other further relief as authorized at law.

WATTS, DONOVAN & TILLEY, P.A.
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, AR  72201-1769
(501) 372-1406
(501) 372-1209 FAX

By: _____
DAVID M. DONOVAN (81184)

## CERTIFICATE OF SERVICE

I, David M. Donovan, hereby certify that a copy of the above and foregoing pleading was mailed to all attorneys of record as listed below this 3 day of November, 2014.

Mr. Paul Pfeifer
Attorney at Law
111 Center St., Ste. 1200
Little Rock, AR 72201

Mr. Luther Oneal Sutter
Sutter & Gillham, P.L.L.C.
P.O. Box 2012
Benton, AR 72018-2012

_____
DAVID M. DONOVAN

## IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT

### MARY DAVIS V UNUM LIFE INSURANCE COMPANY OF AMERIC

60CV-14-3910

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

UNUM LIFE INSURANCE COMPANY OF AMERICA
UNKNOWN
UNKNOWN, UN 00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

PAUL PFEIFER
111 CENTER ST, SUITE 1200
LITTLE ROCK, AR 72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

CLERK OF COURT

LARRY CRANE, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR 72201

*Christy R McDaniel*

CLERK Christy Renee McDaniel, DC

Date: 10/10/2014

No. 60CV-14-3910 This summons is for   UNUM LIFE INSURANCE COMPANY OF AMERICA (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at

_____[place] on _____ [date]; or

❑ I left the summons and complaint in the proximity of the individual by

_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at

_____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of

_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:

_____

❑ I was unable to execute service because:

_____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                              By: _____
                              [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                          [Signature of server]


                          _____
                          [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
2014-Oct-10 11:52:08
60CV-14-3910
C06D06 : 34 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY
## _____ DIVISION

**MARY DAVIS, on behalf of**
**Herself and all others similarly**
**Situated**                                                                **PLAINTIFF**

**VS.**                                    **NO._____**

**UNUM LIFE INSURANCE COMPANY OF AMERICA**                 **DEFENDANT**

### COMPLAINT-CLASS ACTION

COMES NOW Plaintiff, Mary Davis, by and through her attorneys, Luther Sutter

and Paul Pfeifer, and for her complaint states:

### PARTIES AND JURISDICTION

1.       Plaintiff is a resident of Garland County, Arkansas, who while working for

University of Arkansas for Medical Sciences ("UAMS") in Little Rock, Arkansas,

participated in an employer provided insurance plan for long term disability benefits (the

"Plan"). The Plan was underwritten and administered by Unum Life Insurance Company

of America ("Unum"). Defendant is an insurance company authorized to do business in

Arkansas.   (See Plan attached as Exhibit A).   This is government plan that is not

covered by ERISA.  Since the acts giving rise to this action occurred in Pulaski County,

Arkansas, venue is proper.

2.       This is an action to recover benefits under the policy of insurance.  This is

an action for breach of contract and to recover benefits due under an insurance policy.

3.       This Court has personal and subject matter jurisdiction and venue is

proper.

### COUNT I - BREACH OF CONTRACT

4.       While employed by UAMS, Plaintiff participated in the Plan.  While a plan

participant, Plaintiff developed health conditions that resulted in her becoming disabled.

1

She was provided disability benefits for approximately two years under the Plan because she was not able to perform her regular occupation. Plaintiff's conditions have rendered her totally and permanently disabled, and she suffers from severe physical limitations such that she is unable to perform even sedentary work. Despite Plaintiff's severe medical problems, Defendant without legal justification refused to pay Plaintiff the long term disability benefits she is owed after the initial two year period. Defendant has breached its contract. Defendant has placed profit over its policyholders. Defendants actions are intentional, willful, and malicious, especially since it has previously been fined for the exact same conduct.

5.      Plaintiff has complied with all conditions precedent to entitle her to benefits under the Plan and received her final denial on April 17, 2014.

6.      Plaintiff's application for Social Security disability was approved by the Social Security Administration and an offset for benefits paid by the Plan may be applicable.

6.      Defendant underwrote the Plan and is the fiduciary responsible for approving or denying claims and paying them if approved. Accordingly, Unum maintains a conflict of interest in the present situation. Furthermore, Unum purports to exercise discretion to which it is not entitled under applicable law and the Plan.

7.      Plaintiff has been forced to retain the services of counsel in order to bring this action, and Defendant is obligated to pay attorney fees in addition to the unpaid benefits owed Plaintiff.

8.      It is appropriate under these circumstances to award Plaintiff pre-judgment interest and statutory penalties, in addition to awarding her back benefits and current benefits.

9.      Defendant's breach has been so egregious so as to warrant the imposition of punitive damages.

2

### COUNT II - CLASS ACTION

10.     The class consists of all persons, who within three years prior to the filing of this lawsuit have been denied benefits by the Defendant under a policy governed by Arkansas law. The exact number of the class is unknown, but it is believed to exceed 100 (one hundred).

11.     Plaintiff's claims are typical of the class and there are common issues of fact.

12.     These issues include, but are not limited to whether Defendant has exercised discretion in the interpretation of said policies in a manner that violates the law.

13.     A class action is a superior means of adjudicating this controversy. Indeed, common issues of fact and questions of law predominate over individual issues. Here, the common question is whether Defendant is inappropriately exercising discretion to interpret the terms of the policies.

14.     Plaintiff and her counsel are competent to represent the class. She seeks certification under Rule 23 (b)(1), (b)(2), and (b)(3).

15.     As direct result of the exercise of inappropriate discretion, Plaintiff and the Class have been denied benefits.

16.     Plaintiff is therefore entitled to an Order certifying the Class, Ordering Unum to re-evaluate claims in accordance with Arkansas law, for an Order reinstating benefits in the interim, and for an Order requiring Unum to discontinue these illegal claims practices.

WHEREFORE, Plaintiff prays for an order awarding her: back benefits, current benefits, future benefits, pre-judgment interest, attorney's fees, statutory penalties, punitive damages exceeding $500,000.00, costs for a trial by jury, for an Order certifying the Class, for an Order reinstating benefits in the interim, and for an Order requiring

Unum to discontinue these illegal claims practices, and all other appropriate and proper

relief.


Respectfully submitted,

Paul Pfeifer AR Bar #98121
Pfeifer Law Firm, P.A.
111 Center Street, Suite 1200
Little Rock, AR 72201
501-374-4440 (tel.)
501-374-4446 (fax)

And


Luther Sutter AR Bar #95031
Sutter and Gillham P.L.L.C.
Attorneys at Law
P. O. Box 2012
Benton, AR 72018
501/315-1910; Facsimile 501/315-1916
Attorneys for the Plaintiff

By: _____
Paul Pfeifer, Ark. Bar No. 98121

4

## AMENDMENT NO. 29

This amendment forms a part of Group Policy No. 300421 issued to University of Arkansas , the Policyholder.

This policy is changed by the addition or deletion of the pages listed below.

| ADDITIONS | DELETIONS |
|---|---|
| L-PS-2 (10/1/2007) | L-PS-2 (8/1/2004) |

The effective date of these changes is October 1, 2007.  The changes only apply to disabilities which start on or after the effective date.

The policy's terms and provisions will apply other than as stated in this amendment.

Dated at Portland, Maine this 29th day of  October , 2007.

Unum Life Insurance Company of America
By

Secretary

If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of October  29, 2007.
YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.

University of Arkansas
                    Policyholder

By_____
Signature and Title of Officer

A4/jm

# EXHIBIT A

L-PA-1

Policyholder:  University of Arkansas

Policy Number:  300421

Policy Effective Date:  July 1, 1981

Premium Due Dates:  July 1 and the first day
of each following month.

**GROUP**

**LONG**

**TERM**

**DISABILITY**

**INSURANCE**

**POLICY**

**NON**

**PARTICIPATING**

Governing Jurisdiction:  ARKANSAS

Policy Anniversary:  January 1, 2007, and each
following January 1.

UNUM Life Insurance Company of America (referred to as the Company) will pay the benefits provided in this policy.  The Company makes this promise subject to all of this policy's provisions.

The policyholder should read the policy specifications carefully and contact the Company promptly with any questions.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

Signed for the Company at Portland, Maine on the policy effective date.

Secretary                    President

UNUM Life Insurance Company of America

L-1 (1/1/2007)

## SECTION I - POLICY SPECIFICATIONS

1. **Description of Eligible Classes**

   Class 1    Eligible employees earning less than $20,000 per year and eligible
   employees earning in excess of $20,000 per year who do not elect
   Class 2 coverage

   Class 2    Eligible employees earning in excess of $20,000 per year who elect
   additional protection for annual earnings in excess of $20,000 per
   year

   Class 3    All Employees of Univeristy of Arkansas at Batesville

2. **Amounts of Insurance**

   **Class 1**

   a. 60% (benefit percentage) of basic monthly earnings not to exceed the
   maximum monthly benefit, less other income benefits.

   > Note: This benefit is subject to reductions for earnings as provided
   > in the Monthly Benefit section of this policy.

   b. The maximum monthly benefit is $1,000.

   **Class 2 and 3**

   a. 60% (benefit percentage) of basic monthly earnings not to exceed the
   maximum monthly benefit, less other income benefits.

   > Note: This benefit is subject to reductions for earnings as provided
   > in the Monthly Benefit section of this policy.

   b. The maximum monthly benefit is $5,000.

   **All Classes**

   The minimum monthly benefit is the greater of:

   a. $100.00; or

   b. 10% of the monthly benefit before deductions for other income benefits.

## SECTION 1 - POLICY SPECIFICATIONS (continued)

3. **Maximum Benefit Period**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65 but not less than 60 months |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

4. **Elimination Period:** 180 days or the end of accumulated sick leave, whichever is later.

5. **Minimum Requirement for Active Employment:** 20 hours per week

6. **Definition of Basic Monthly Earnings**

   **For Physicians:**

   "Basic monthly earnings" means base pay only. It includes shift differential but does not include commissions, bonuses, overtime pay and any other extra compensation.

   **For all other employees:**

   "Basic monthly earnings" means the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins.  It includes shift differential but does not include commissions, bonuses, overtime pay and other extra compensation.

7. **Waiting Period:**

   a. Employees in an eligible class on or before the policy effective date: None

   b. Employees entering an eligible class after the policy effective date:  None

   The employee must be in continuous active employment in an eligible class during the specified waiting period.

L-PS-2 (10/1/2007)

SECTION - POLICY SPECIFICATIONS (continued)

8. **Employee Contributions Required:**

   **Class 1 and 3**

   No

   **Class 2**

   Yes

   Note:     Coverage for which contributions are required applies only if
             proper enrollment is made and the required contributions are made.

9. **Divisions, Subsidiaries or Affiliated Companies Included**

   | <u>Name</u> | <u>Location (City and State)</u> |
   |---|---|
   | University of Arkansas For Medical Sciences | Little Rock, AR |
   | University of Arkansas of Little Rock | Little Rock, AR |
   | University of Arkansas at Monticello | Monticello, AR |
   | University of Arkansas at Pine Bluff | Pine Bluff, AR |
   | Razorback Foundation, Inc. | Fayetteville, AR |
   | Arts Center Council | Fayetteville, AR |
   | University of Arkansas Foundation, Inc. | Fayetteville, AR |
   | University of Arkansas at Batesville | Batesville, AR |

10. **Changes Effective**

    Subject to the Delayed Effective Date subsections, changes in insurance take
    effect immediately.

L-PS-3 (1/1/01)

## SECTION I – POLICY SPECIFICATIONS (continued)

### Continuation of Your Insurance During Certain Absences

| Type of Absence | Time Limit |
|---|---|
| Leave of Absence for Educational Purposes | Up to twelve months. |
| Temporary Layoff or Leave of Absence other than Family and Medical Leave of Absence | Up to twelve months. |
| Family and Medical Leave of Absence | UNUM will continue your insurance in accordance with your employer's Human Resource policy on family and medical leaves of absence - as if you were in active employment, if the following conditions are met: |

**Family and Medical Leave of Absence**

UNUM will continue your insurance in accordance with your employer's Human Resource policy on family and medical leaves of absence - as if you were in active employment, if the following conditions are met:

1. premiums are paid, and
2. your employer has approved your leave in writing.

Coverage will be continued for up to the greater of:

1. the leave period required by the federal Family and Medical Leave Act of 1993, and any amendments, or
2. the leave period required by applicable state law.

If coverage is not continued during a family or medical leave of absence, upon your return to active employment:

1. no new waiting periods will be applied,
2. no new pre-existing conditions exclusions will be applied, and
3. no evidence of insurability will be required,

to reinstate the coverage in effect on the date before the leave began.

The time period in the Pre-Existing Condition Exclusion

L-PS-4 (7/1/03)

### SECTION ) - POLICY SPECIFICATIONS (. )tinued)

will continue to run through
your family or medical
leave of absence.

### 11. Discretionary Authority

In making any benefits determination under this policy, the Company shall
have the discretionary authority both to determine an employee's eligibility
for benefits and to construe the terms of this policy.

## SECTIO.  } POLICY SPECIFICATIONS (.  }nued)

**Initial Premium Rates**

**Class 1**

**Monthly Premium:** .15% of total covered payroll per month.

**Class 2**

**Monthly Premium:** .29% of total covered payroll in excess of $1,667 per month.

"Total covered payroll" is the total amount of basic monthly earnings for which all employees are insured under this policy.

## SECTION II - DEFINITIONS

For the purposes of this policy:

"Active employment" means the employee must be working:

1. for the employer on a full-time basis and paid regular earnings (temporary or seasonal employees are excluded);

2. at least the minimum number of hours shown in the policy specifications; and either

3. at the employer's usual place of business; or

4. at a location to which the employer's business requires the employee to travel.

"Basic monthly earnings"--As defined in the policy specifications.

"Certificate" means a written statement prepared by the Company including all riders and supplements, if any, setting forth a summary of:

1. the insurance benefits to which an employee is entitled;

2. to whom the benefits are payable; and

3. limitations or requirements that may apply.

"Disability" or "disabled" - see last page of Section II.

"Disability benefits," when used with the term retirement plan, means money which:

1. is payable under a retirement plan due to disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the disability had not occurred.  (If the payment does cause such a reduction, it will be deemed a retirement benefit as defined in this policy.)

"Eligibility date" means the date an employee becomes eligible for insurance under this policy.  Classes eligible are shown in the policy specifications.

"Elimination period" means a period of consecutive days of disability for which no benefit is payable.  The elimination period is shown in the policy specifications and begins on the first day of disability.

Note: If disability stops during the elimination period for any 30 (or less) days, then the disability will be treated as continuous.  But days that the insured is not disabled will not count toward the elimination period.

"Employee" means a person in active employment with the employer.

L-DEF-1 (8/1/2004)

## SE ,.ON II - DEFINITIONS (continu )

"Employer" means the policyholder and includes any division, any subsidiary or any affiliated company named in the policy specifications.

"Evidence of insurability" means a statement or proof of an employee's medical history upon which acceptance for insurance will be determined by the Company.

"Grace period" is the 45 days following a premium due date during which premium payment may be made.

"Gross monthly benefit" means the insured's benefit amount before any reduction for other income benefits and earnings.

"Home office" means the UNUM Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122.

"Indexed pre-disability earnings" means the insured's basic monthly earnings in effect just prior to the date his disability began adjusted on the first anniversary of benefit payments and each following anniversary. Each adjustment will be based on the lesser of 10% or the current annual percentage increase in the Consumer Price Index.

Note: The Consumer Price Index (CPI-W) is published by the U. S. Department of Labor. The Company reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

"Initial enrollment period" means one of the following periods during which an employee may first make written application for coverage under this policy:

1. for an employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the policyholder and the Company.

2. for an employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his eligibility date.

"Injury" means bodily injury resulting directly from an accident and independently of all other causes. The injury must occur and disability must begin while the employee is insured under this policy.

"Insured" means an employee insured under this policy.

"Male pronoun" whenever used includes the female.

"Monthly Benefit" means the amount payable by the Company to the disabled insured.

L-DEF-2 (7/1/93)

S.    ON II - DEFINITIONS (conti    )

"Physician" means a person who is:

1.   operating within the scope of his license; and either

2.   licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

3.   legally qualified as a medical practitioner and required to be recognized, under this policy for insurance purposes, according to the insurance statutes or the insurance regulations of the governing jurisdiction.

It will not include an employee or his spouse, daughter, son, father, mother, sister or brother.

"Policy Specifications" is the document showing the eligible classes, the amounts of insurance and other relevant information pertaining to the plan of insurance applied for by the policyholder.  This document, designated Section I, is attached to and is part of this policy.

"Policy Year" means July 1 through June 30.

"Retirement benefits", when used with the term retirement plan, means money which:

1.   is payable under a retirement plan either in a lump sum or in the form of periodic payments;

2.   does not represent contributions made by an employee; and

    Note: payments which represent employee contributions are deemed to be received over the employee's expected remaining life regardless of when such payments are actually received.

3.   is payable upon:

    a.   early or normal retirement; or

    b.   disability if the payment does reduce the amount of money which would have been paid at the normal retirement age under the plan if the disability had not occurred.

"Retirement plan" means a plan which provides retirement benefits to employees and which is not funded wholly by employee contributions.  The term shall not include a profit-sharing plan, a thrift plan, an individual retirement account (IRA), a tax sheltered annuity (TSA), a stock ownership plan, or a non-qualified plan of deferred compensation.

L-DEF-3

SL   DN II - DEFINITIONS (contir    )

Note:    "Employer's retirement plan" is deemed to include any re-
tirement plan:

1.    which is part of any federal, state, county, municipal
or association retirement system; and

2.    for which the employee is eligible as a result of em-
ployment with the employer.

"Sickness" means illness or disease.  It will include pregnancy unless ex-
cluded in the General Exclusions section of this policy.  The disability must
begin while the employee is insured under this policy.

"Waiting period," as shown in the policy specifications, means the continuous
length of time an employee must serve in an eligible class to reach his el-
igibility date.

L-DEF-4

## SECTION II - DEFINITIONS (continued)

"Disability" and "disabled" mean that because of injury or sickness:

1.   the insured cannot perform each of the material duties of his regular occupation; and

2.   after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience; or

3.   the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:

     a.   performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and

     b.   earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.


For employees employed as airplane pilots, co-pilots and crew members

"Disability" and "disabled" mean that because of injury or sickness the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience.  The loss of a pilot's license for any reason does not, in itself, constitute disability.

L-DEF-5 (1/1/95)

## SECTIO. ) - ELIGIBILITY AND EFFEC' )DATES

### A. ELIGIBLE CLASSES

The classes eligible for insurance are shown in the policy specifications.

### B. ELIGIBILITY DATE

An employee in an eligible class will be eligible for insurance on the later of:

1. the policy effective date; or

2. the day after the employee completes the waiting period.

### C. ENROLLMENT

An employee may enroll or change coverage only during an enrollment period as follows.

1. **Initial Enrollment Period**

   During an employee's initial enrollment period:

   a. he will automatically be enrolled in Class 1.  But he may choose to enroll in another class; and

   b. an employee who is eligible for insurance on the policy effective date may apply for a coverage option for the first policy year.

   c. an employee who becomes eligible for insurance after the policy effective date may apply for a coverage option for the policy year in which he is first eligible.

2. **Rehired Employees**

   If a former employee is rehired by the employer within the same policy year that his employment terminated he will be insured for the same plan of insurance that was in effect for him on the date his employment terminated.

3. **Changes in Coverage**

   An employee may change his coverage at any time by:

   a. increasing his coverage; or

   b. decreasing his coverage.

   In the case of a. above, the employee must submit an application and evidence of insurability to the Company for approval. This will be at the employee's expense.

### D. EFFECTIVE DATE OF INSURANCE

1. Insurance will be effective at 12:01 a.m. on the day determined as follows, but only if the employee's written application for insurance is:

   a. made with the Company through his employer; and

   b. on a form satisfactory to the Company.

L-EFF-1

SECTION III -    )GIBILITY AND EFFECTIVE D    S (continued)

2. An employee will be insured for non-contributory coverage on his eligibility date.

3. An employee will be insured for contributory coverage on the latest of these dates:

   a. the employee's eligibility date if he applies before that date; or

   b. the date the employee applies if he does it on or before the 31st day after his eligibility date.

   c. the date the Company gives its approval, if the employee:

      i. applies more than 31 days after his eligibility date; or

      ii. terminated his insurance while continuing to be eligible; or

      iii. applies for Class 2 coverage if he was previously enrolled in Class 1.

4. Delayed Effective Date For Insurance

   The effective date of any initial, increased or additional insurance will be delayed for an employee if he is not in active employment because of a disability on the date that insurance would otherwise be effective. The initial, increased or additional insurance will start on the date that person returns to active employment.

## SECTION IV - BENEFITS

### DISABILITY

When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

1. disability; and

2. regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

The monthly benefit will not:

1. exceed the insured's amount of insurance; nor

2. be paid for longer than the maximum benefit period.

The amount of insurance and the maximum benefit period are shown in the policy specifications.

### MONTHLY BENEFIT

**Class 1**

To figure the amount of monthly benefit:

1. Take the lesser of:

   a. 60% of the insured's basic monthly earnings; or

   b. the amount of the maximum monthly benefit shown in the policy specifications; and

2. Deduct other income benefits, shown below, from this amount.

**Class 2**

To figure the amount of monthly benefit:

1. Take the lesser of:

   a. 60% of the insured's basic monthly earnings; or

   b. the amount of the maximum monthly benefit shown in the policy specifications; and

2. Deduct other income benefits, shown below, from this amount.

L-BEN-1 (7/1/83)

UP CAEPFAXNNNH003   8/19/2011 3:58:49 PM   PAGE   17/030   Fax Server

## SECTION IV - BENEFITS (continued)

But, if the insured is earning more than 20% of his indexed pre-disability earnings in his regular occupation or another occupation, then the monthly benefit will be figured as follows:

1. During the first 12 months, the monthly benefit will not be reduced by any earnings until the gross monthly benefit plus the insured's earnings exceed 100% of his indexed pre-disability earnings. The monthly benefit will then be reduced by that excess amount.

2. After 12 months, the following formula will be used to figure the monthly benefit.

$$(A \text{ divided by } B) \times C$$

A = The insured's "indexed pre-disability earnings" minus the insured's monthly earnings received while he is disabled.
B = The insured's "indexed pre-disability earnings".
C = The benefit as figured above.

The benefit payable will never be less than the minimum monthly benefit shown in the policy specifications.

Proof of the insured's monthly earnings must be given to the Company on a quarterly basis. Benefit payments will be adjusted upon receipt of this proof of earnings.

## OTHER INCOME BENEFITS

Other income benefits means those benefits as follows.

1. The amount for which the insured is eligible under:

    a. Workers' or Workmen's Compensation Law;

    b. occupational disease law; or

    c. any other act or law of like intent.

2. The amount of any disability income benefits for which the insured is eligible under any compulsory benefit act or law.

3. The amount of any disability income benefits for which the insured is eligible under:

    a. any other group insurance plan;

    b. any governmental retirement system as a result of his job with the employer.

4. The amount of disability benefits and/or retirement benefits received by the insured under the employer's retirement plan.

    As used here, "received" does not include any amount rolled over or transferred to any eligible retirement plan as that term is defined in

L-BEN-2

## SECTION IV - BENEFITS (continued)

Section 402 of the Internal Revenue Code and any future amendments which affect the definition of an eligible retirement plan.

5. The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or The Quebec Pension Plan, or any similar plan or act, as follows:

    a.  disability benefits for which:

       i.  the insured is eligible; and

       ii.  his spouse, child or children are eligible because of his disability; or

    b.  retirement benefits received by:

       i.  the insured; and

       ii.  his spouse, child or children because of his receipt of the retirement benefits.

These other income benefits, except retirement benefits, must be payable as a result of the same disability for which this policy pays a benefit.

Item 5.b. will not apply to disabilities which begin after age 70 for those insureds already receiving Social Security retirement benefits while continuing to work beyond age 70.

Benefits under Item 5.a above will be estimated if such benefits:

1. have not been awarded; and

2. have not been denied; or

3. have been denied and the denial is being appealed.

The monthly benefit will be reduced by the estimated amount.  But, these benefits will not be estimated provided that the insured:

1. applies for benefits under Item 5.a; and

2. requests and signs the Company's Agreement Concerning Benefits.

This agreement states that the insured promises to repay the Company any overpayment caused by an award received under Item 5.a.

If benefits have been estimated, the monthly benefit will be adjusted when the Company receives proof:

1. of the amount awarded; or

2. that benefits have been denied and the denial is not being appealed.

In the case of 2. above, a lump sum refund of the estimated amounts will be made.

"Law," "plan," or "act" means the initial enactment and all amendments.

L-BEN-3

## SECTION IV - BENEFITS (continued)

### COST OF LIVING FREEZE

After the first deduction for each of the other income benefits, the monthly benefit will not be further reduced due to any cost of living increases payable under these other income benefits.

### LUMP SUM PAYMENTS

Other income benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the insured's expected lifetime as determined by the Company.

### TERMINATION OF DISABILITY BENEFITS

Disability benefits will cease on the earliest of:

1. the date the insured is no longer disabled;

2. the date the insured dies;

3. the end of the maximum benefit period;

4. the date the insured's current earnings exceed 80% of his indexed pre-disability earnings.

### RECURRENT DISABILITY

"Recurrent disability" means a disability which is related to or due to the same cause(s) of a prior disability for which a monthly benefit was payable.

A recurrent disability will be treated as part of the prior disability if, after receiving disability benefits under this policy, an insured:

1. returns to his regular occupation on a full-time basis for less than six months; and

2. performs all the material duties of his occupation.

Benefit payments will be subject to the terms of this policy for the prior disability.

If an insured returns to his regular occupation on a full-time basis for six months or more, a recurrent disability will be treated as a new period of disability. The insured must complete another elimination period.

In order to prevent overinsurance because of duplication of benefits, benefits payable under this Recurrent Disability provision will cease if benefits are payable to the insured under any other group long term disability policy.

L-BEN-4

## SECTION IV - BENEFITS (continued)

### ONE YEAR SURVIVOR INCOME BENEFIT*

The Company will pay a benefit to the eligible survivor when proof is received that an insured died:

1. after disability had continued for six or more consecutive months; and

2. while receiving a monthly benefit.

This benefit will be paid monthly for one year from the date of death.   The amount will be equal to 66 2/3% of the insured's last monthly benefit.

If payment becomes due to the insured's children, payment will be made to:

1. the children; or

2. a person named by the Company to receive payments on the children's behalf. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

"Eligible survivor" means the insured's spouse, if living, or if the spouse died before the final monthly benefit is paid, then, the insured's children who are under age 25.

"Last monthly benefit" means the monthly benefit paid to the insured immediately prior to his death but not including any adjustment for earnings.

### GENERAL EXCLUSIONS

This policy does not cover any disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries;

3. active participation in a riot.

### PRE-EXISTING CONDITION EXCLUSION

This policy will not cover any disability:

1. caused by, contributed to by, or resulting from a pre-existing condition; and

2. which begins in the first 12 months after an insured's effective date.

A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

---

*Special

L-BEN-5 (1/1/2007)

## SECTION IV - BENEFITS (conti. d)

### MENTAL ILLNESS LIMITATION

Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments unless the insured meets one of these situations.

1. The insured is in a hospital or institution at the end of the 24-month period. The monthly benefit will be paid during the confinement.

   If the insured is still disabled when he is discharged, the monthly benefit will be paid for a recovery period of up to 90 days.

   If the insured becomes reconfined during the recovery period for at least 14 days in a row, benefits will be paid for the confinement and another recovery period up to 90 more days.

2. The insured continues to be disabled and becomes confined:

   a. after the 24-month period; and

   b. for at least 14 days in a row.

   The monthly benefit will be payable during the confinement.

The monthly benefit will not be payable beyond the maximum benefit period.

"Hospital" or "institution" means facilities licensed to provide care and treatment for the condition causing the insured's disability.

"Mental illness" means mental, nervous or emotional diseases or disorders of any type.

L-BEN-6 (1/1/2007)

UP CAEPFAXNNNH003     8/19/2011 3:58:49 PM   PAGE  22/030     Fax Server

SE      ON V - TERMINATION PROV.      NS

## A. TERMINATION OF EMPLOYEE'S INSURANCE

An employee will cease to be insured on the earliest of the following dates:

1. the date this policy terminates;

2. the date the employee is no longer in an eligible class;

3. the date the employee's class is no longer included for insurance;

4. the last day for which any required employee contribution has been made;

5. the date employment terminates.  Cessation of active employment will be deemed termination of employment, except:

   a. the insurance will be continued for a disabled employee during:

      i. the elimination period; and

      ii. while benefits are being paid.

   b. the employer may continue the employee's insurance by paying the required premiums, subject to the following:

      i. Insurance may be continued for the time shown in the policy specifications for an employee:

         a) temporarily laid off; or

         b) given leave of absence.

      ii. The employer must act so as not to discriminate unfairly among employees in similar situations.

## B. TERMINATION OF POLICY

1. Termination of this policy under any conditions will not prejudice any payable claim which occurs while this policy is in force.

2. If the policyholder fails to pay any premium within the grace period, this policy will automatically terminate at 12:00 midnight of the last day of the grace period.  The policyholder may terminate this policy by advance written notice delivered to the Company at least 31 days prior to the termination date.  But, this policy will not terminate during any period for which premium has been paid.  The policyholder will be liable to the Company for all premiums due and unpaid for the full period for which this policy is in force.

3. The Company may terminate this policy on any premium due date by giving written notice to the policyholder at least 31 days in advance if:

   a. the number of employees insured is less than 10; or

   b. less than 100% of the employees eligible for any noncontributory insurance are insured for it; or

   c. less than 75% of the employees eligible for any contributory insurance are insured for it; or

## SECTION V - TERMINATION PROVISIONS

  d.  the policyholder fails:

      i.  to furnish promptly any information which the Company may reasonably require; or

      ii.  to perform any other obligations pertaining to this policy.

  4.  Termination may take effect on an earlier date when both the policyholder and the Company agree.

**C.  TERMINATION OF CLASS**

  1.  The Company reserves the right to set a participation requirement for each class of coverage and to terminate that class if those participation requirements are not met.

**D.  CONVERSION PRIVILEGE**

When an individual's insurance under this policy terminates because he ends employment with the policyholder, he may obtain converted disability income coverage without medical evidence of insurability.  But the individual must have been insured for at least twelve consecutive months just before his insurance under this policy terminated.  These twelve months will be considered to include the time the individual was insured for group long term disability under both this policy and the one it replaced, if any.

The conversion privilege is not available to any individual:

  1.  whose insurance under this policy terminates for any of the following reasons:

      a.  this policy terminates;

      b.  this policy is amended to exclude from coverage the class of employees to which the individual belongs;

      c.  the individual no longer belongs to a class of employees eligible for coverage under this policy;

      d.  the individual retires (when the individual receives payment from any employer's retirement plan as recognition of past services or has concluded their working career);

      e.  the individual failed to pay any required premium;

  2.  who is or becomes insured for long term disability insurance under another group plan within 31 days after termination;

  3.  who is disabled under the terms of this policy;

  4.  who recovers from a disability and does not return to work for the policyholder; or

  5.  who is on a leave of absence.

The conversion coverage must be applied for and the first quarterly premium paid within 31 days after termination of insurance under this policy.

L-TERM-2 (1/1/95)

UP CAEPFAXNNNH003      8/19/2011 3:58:49 PM   PAGE   24/030    Fax Server

## SECTION V - TERMINATION PROVISIONS

The Company governs the form of coverage, the benefits and the amounts.
The benefits and amounts may differ from those under this policy.

L-TERM-3 (1/1/95)

## SEC    VI - GENERAL POLICY PROVISIONS

### A. STATEMENTS

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees).  No representation by:

1. the policyholder in applying for this policy will make it void unless the representation is contained in the application; or

2. any employee in applying for insurance under this policy will be used to reduce or deny a claim unless a copy of the application for insurance is or has been given to the employee.

### B. COMPLETE CONTRACT - POLICY CHANGES

1. This policy is the complete contract.  It consists of:

   a. all of the pages;

   b. the policy specifications;

   c. the attached application of the policyholder;

   d. each employee's application for insurance (employee retains his own copy).

2. This policy may be changed in whole or in part.  Only an officer or a registrar of the Company can approve a change.  The approval must be in writing and endorsed on or attached to this policy.

3. Any other person, including an agent, may not change this policy or waive any part of it.

### C. EMPLOYEE'S CERTIFICATE

The Company will provide a certificate to the policyholder for delivery to each insured.  If the terms of a certificate and this policy differ, this policy will govern.

### D. FURNISHING OF INFORMATION - ACCESS TO RECORDS

1. The employer will furnish at regular intervals to the Company:

   a. information relative to employees:

      i.   who qualify to become insured;

      ii.  whose amounts of insurance change; and/or

      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably re-quired.

The employer's records which, in the opinion of the Company, have a bearing on the insurance will be opened for inspection by the Company at any reasonable time.

2. Clerical error or omission will not:

L-GPP-1

## SECT VI - GENERAL POLICY PRO DNS

a.  deprive an employee of insurance;

b.  affect an employee's amount of insurance; or

c.  effect or continue an employee's insurance which otherwise would not be in force.

### E.  MISSTATEMENT OF FACTS

If relevant facts about any employee were not accurate:

1.  a fair adjustment of premium will be made; and

2.  the true facts will decide if and in what amount insurance is valid under this policy.

### F.  NOTICE AND PROOF OF CLAIM

1.  **Notice**

    a.  Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible.  If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.

    b.  When the Company has the written notice of claim, the Company will send the insured its claim forms.  If the forms are not received within 15 days after written notice of claim is sent, the insured can send the Company written proof of claim without waiting for the form.

2.  **Proof**

    a.  Proof of claim must be given to the Company.  This must be done no later than 90 days after the end of the elimination period.

    b.  If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible.  But proof of claim may not be given later than one year after the time proof is otherwise required.

    c.  Proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof.

    d.  The proof must cover:

        i.  the date disability started;

        ii.  the cause of disability; and

        iii. how serious the disability is.

L-GPP-2

SECT )VI - GENERAL POLICY PRO     DNS

### G. EXAMINATION

The Company, at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim:

1.  examined by a physician, other health professional, or vocational expert of its choice; and/or

2.  interviewed by an authorized Company representative.

### H. LEGAL PROCEEDINGS

A claimant or the claimant's authorized representative cannot start any legal action:

1.  until 60 days after proof of claim has been given; nor

2.  more than 3 years after the time proof of claim is required.

### I. TIME OF PAYMENT OF CLAIMS

When the Company receives proof of claim, benefits payable under this policy will be paid monthly during any period for which the Company is liable.

### J. PAYMENT OF CLAIMS

All benefits are payable to the employee.  But if a benefit is payable to an employee's estate, an employee who is a minor, or an employee who is not competent, the Company has the right to pay up to $1,000 to any of the employee's relatives whom the Company considers entitled.  If the Company pays benefits in good faith to a relative, the Company will not have to pay such benefits again.

### K. WORKERS' OR WORKMEN'S COMPENSATION

This policy is not in lieu of, and does not affect, any requirement for coverage by workers' or workmen's compensation insurance.

### L. AGENCY

For all purposes of this policy, the policyholder acts on its own behalf or as agent of the employee.  Under no circumstances will the policyholder be deemed the agent of the Company.

## SECTION VII - PREMIUMS

### A. PREMIUM RATES

The initial premium is determined on the basis of the rates shown in the policy specifications.

The Company may establish new rates for the computation of all future premiums as well as the one then due:

1. when the terms of this policy are changed;

2. when a division, subsidiary, or affiliated company is added to this policy; or

3. for reasons other than 1. and 2. above, such as, but not limited to a change in factors bearing on the risk assumed. But, the rates may not be changed within the first 12 months following the policy effective date.

No premium may be increased unless the Company notifies the employer at least 31 days in advance of the increase. Premium increases may take effect on an earlier date when both the Company and the employer agree.

### B. PAYMENT OF PREMIUMS

1. Premium payment calculations:

   a. will be based on the coverage provided under this policy; and

   b. are determined by the covered payroll as shown in the policy specifications.

2. All premiums due under this policy, including adjustments, if any, are payable by the employer on or before their respective due dates at the Company's home office. The due dates are specified on the first page of this policy.

3. Premiums payable to the Company will be paid in United States dollars.

4. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

5. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only and will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of Employee's Insurance" section of this policy.

6. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a pro rata adjustment on the next premium due date.

7. Except for fraud, premium adjustments, refunds or charges will be made for only:

   a. the current policy year; and

   b. the prior policy year.

L-PREM-1

UP CAEPFAXNNNH003     8/19/2011 3:58:49 PM   PAGE  29/030    Fax Server

SECTION VII - PREMIUMS

**C. WAIVER OF PREMIUM**

Premium payments for an employee are waived during any period for which benefits are payable.  Premium payments may be resumed following a period during which they were waived.

L-PREM-2

**Notice of Required Information**
**Arkansas Act 197**

Dear Policyholder:

We are required by Arkansas Act 197 to include the addresses and telephone numbers of the Insurance Department and the office where this policy is serviced.

Insurance
Department:

Arkansas Insurance Department
Consumer Services Division
400 University Tower Building
Little Rock, Arkansas 72204
Telephone:  (501) 371-1813

Service
Office:

UNUM
850 Lake Ridge Blvd.
Suite 208
Memphis, Tennessee 38119
Telephone:  (901) 683-8680



CERTIFIED MAIL

7004 1350 0000 9139 3504

UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0000801482
$ 013.50⁰
OCT 13 2014
MAILED FROM ZIP CODE 72201

Paul Pfeifer
Pfeifer Law Firm, P.A.
111 Center Street, Suite 1200
Little Rock, AR 72201

CERTIFIED MAIL/RETURN RECEIPT REQUESTED
RESTRICTED DELIVERY
Corporation Service Company
Agent of Service for
UNUM Life Insurance Company of America
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, AR 72201

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION – 6TH

MARY DAVIS, on behalf of Herself
and all others similarly situated                                    PLAINTIFF

V.                                    CASE NO. 60CV-14-3910

UNUM LIFE INSURANCE COMPANY OF AMERICA                    DEFENDANT

## NOTICE OF REMOVED ACTION

Defendant, Unum Life Insurance Company of America, hereby serves notice

that it has this date filed a Notice of Removal with the United States District Court

for the Eastern District of Arkansas, Western Division.  Copies of all pleadings,

process, orders, and other filings in the Circuit Court of Pulaski County, Arkansas,

have been attached to the Notice of Removal.  Counsel for Plaintiff has received

written notice of this Notice of Removal.  Attached hereto as Exhibit A is copy of the

Notice of Removal.

/s/ David M. Donovan
DAVID M. DONOVAN (81184)
WATTS, DONOVAN & TILLEY, P.A.
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, AR  72201-1769
(501) 372-1406
(501) 372-1209 FAX
david.donovan@wdt-law.com

1 of 2

## CERTIFICATE OF SERVICE

    I, David M. Donovan, hereby certify that on November 3, 2014, I electronically filed the foregoing pleading using the Pulaski County eFiling system which shall send notification of such filing to the following:

Mr. Paul Pfeifer                    Mr. Luther Oneal Sutter
paulpfeif@gmail.com            luthersutter@yahoo.com


*/s/* David M. Donovan
DAVID M. DONOVAN (81184)
WATTS, DONOVAN & TILLEY, P.A.
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, AR  72201-1769
(501) 372-1406
(501) 372-1209 FAX
david.donovan@wdt-law.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MARY DAVIS, on behalf of Herself
and all others similarly situated                                          PLAINTIFF

V.                                  CASE NO. _____

UNUM LIFE INSURANCE COMPANY OF AMERICA                    DEFENDANT

### NOTICE OF REMOVAL

Comes now Defendant, Unum Life Insurance Company of America, and for its removal of this action pursuant to 28 U.S.C. § 1441, et seq., states:

1.      On or about October 10, 2014, a civil action was commenced against Defendant in the Circuit Court of Pulaski County, Arkansas, Civil Division – 6th, styled <u>Mary Davis, on behalf of Herself and all others similarly situated v. Unum Life Insurance Company of America</u>, Case No. 60CV-14-3910.

2.      Defendant, through its agent for service, Corporation Service Company, received service of copies of the Summons and Complaint in this action on October 15, 2014.  Copies of the Summons and Complaint, together with all attachments, served on Defendant are attached hereto.

3.      The pleadings and process which are referred to in the preceding paragraph constitute the only process, pleadings, orders, or other filings in the Pulaski County Circuit Court action.

4.      Plaintiff is a resident and citizen of the State of Arkansas.



5.     Defendant is a corporation incorporated in a state other than Arkansas. It has its principal place of business in a state other than Arkansas.  It is a citizen and resident of a state other than Arkansas.

6.     There is complete diversity of citizenship between Plaintiff and Defendant.

7.     The amount in controversy exceeds $75,000.  Plaintiff seeks back benefits, current benefits, future benefits, attorney's fees, statutory penalties, and punitive damages exceeding $500,000.

8.     This Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1332.

9.     This Court has removal jurisdiction under 28 U.S.C. § 1441(a).

10.     This Notice of Removal is filed within thirty days of the service of the Complaint and Summons on Defendant.  The action is therefore timely removed pursuant to 28 U.S.C. § 1446.

11.     Defendant has this date given written notice of the filing of this notice to Plaintiff as required by 28 U.S.C. § 1446(d) and to the Circuit Clerk of Pulaski County, Arkansas, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant requests that this action proceed in this Court on the basis of this removal, that the Court assume jurisdiction of this case through resolution, and for such other further relief as authorized at law.

WATTS, DONOVAN & TILLEY, P.A.
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, AR  72201-1769
(501) 372-1406
(501) 372-1209 FAX

By: _____
DAVID M. DONOVAN (81184)

## CERTIFICATE OF SERVICE

I, David M. Donovan, hereby certify that a copy of the above and foregoing pleading was mailed to all attorneys of record as listed below this 3 day of November, 2014.

Mr. Paul Pfeifer
Attorney at Law
111 Center St., Ste. 1200
Little Rock, AR 72201

Mr. Luther Oneal Sutter
Sutter & Gillham, P.L.L.C.
P.O. Box 2012
Benton, AR 72018-2012

_____
DAVID M. DONOVAN

3 of 3

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

<u>MARY DAVIS V UNUM LIFE INSURANCE COMPANY OF AMERIC</u>

60CV-14-3910

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

  UNUM LIFE INSURANCE COMPANY OF AMERICA
UNKNOWN
UNKNOWN, UN  00000

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint.  Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

PAUL PFEIFER
111 CENTER ST, SUITE 1200
LITTLE ROCK, AR  72201

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:


CLERK OF COURT

Address of Clerks Office

LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201

*Christy R McDaniel*

CLERK Christy Renee McDaniel, DC

Date: 10/10/2014

No. 60CV-14-3910 This summons is for   UNUM LIFE INSURANCE COMPANY OF AMERICA (name of Defendant).

## PROOF OF SERVICE

❑ I personally delivered the summons and complaint to the individual at
_____[place] on _____ [date]; or

❑ I left the summons and complaint in the proximity of the individual by
_____ after he/she refused to receive it when I offered it to him/her; or

❑ I left the summons and complaint at the individual's dwelling house or usual place of abode at
_____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

❑ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

❑ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

❑ Other [specify]:
_____

❑ I was unable to execute service because:
_____
_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                                By: _____
                                [Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____     By: _____
                         [Signature of server]


                         _____
                         [Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____


_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____

ELECTRONICALLY FILED
2014-Oct-10 11:52:08
60CV-14-3910
C06D06 : 34 Pages

## IN THE CIRCUIT COURT OF PULASKI COUNTY
## _____ DIVISION

**MARY DAVIS, on behalf of**
**Herself and all others similarly**
**Situated**                                                                **PLAINTIFF**

**VS.**                                   **NO.**_____

**UNUM LIFE INSURANCE COMPANY OF AMERICA**               **DEFENDANT**

### COMPLAINT-CLASS ACTION

COMES NOW Plaintiff, Mary Davis, by and through her attorneys, Luther Sutter and Paul Pfeifer, and for her complaint states:

### PARTIES AND JURISDICTION

1.     Plaintiff is a resident of Garland County, Arkansas, who while working for University of Arkansas for Medical Sciences ("UAMS") in Little Rock, Arkansas, participated in an employer provided insurance plan for long term disability benefits (the "Plan"). The Plan was underwritten and administered by Unum Life Insurance Company of America ("Unum"). Defendant is an insurance company authorized to do business in Arkansas. (See Plan attached as Exhibit A). This is government plan that is not covered by ERISA. Since the acts giving rise to this action occurred in Pulaski County, Arkansas, venue is proper.

2.     This is an action to recover benefits under the policy of insurance. This is an action for breach of contract and to recover benefits due under an insurance policy.

3.     This Court has personal and subject matter jurisdiction and venue is proper.

### COUNT I - BREACH OF CONTRACT

4.     While employed by UAMS, Plaintiff participated in the Plan. While a plan participant, Plaintiff developed health conditions that resulted in her becoming disabled.

1

She was provided disability benefits for approximately two years under the Plan because she was not able to perform her regular occupation. Plaintiff's conditions have rendered her totally and permanently disabled, and she suffers from severe physical limitations such that she is unable to perform even sedentary work. Despite Plaintiff's severe medical problems, Defendant without legal justification refused to pay Plaintiff the long term disability benefits she is owed after the initial two year period. Defendant has breached its contract. Defendant has placed profit over its policyholders. Defendants actions are intentional, willful, and malicious, especially since it has previously been fined for the exact same conduct.

5.      Plaintiff has complied with all conditions precedent to entitle her to benefits under the Plan and received her final denial on April 17, 2014.

6.      Plaintiff's application for Social Security disability was approved by the Social Security Administration and an offset for benefits paid by the Plan may be applicable.

6.      Defendant underwrote the Plan and is the fiduciary responsible for approving or denying claims and paying them if approved. Accordingly, Unum maintains a conflict of interest in the present situation. Furthermore, Unum purports to exercise discretion to which it is not entitled under applicable law and the Plan.

7.      Plaintiff has been forced to retain the services of counsel in order to bring this action, and Defendant is obligated to pay attorney fees in addition to the unpaid benefits owed Plaintiff.

8.      It is appropriate under these circumstances to award Plaintiff pre-judgment interest and statutory penalties, in addition to awarding her back benefits and current benefits.

9.      Defendant's breach has been so egregious so as to warrant the imposition of punitive damages.

2

### COUNT II - CLASS ACTION

10.     The class consists of all persons, who within three years prior to the filing of this lawsuit have been denied benefits by the Defendant under a policy governed by Arkansas law. The exact number of the class is unknown, but it is believed to exceed 100 (one hundred).

11.     Plaintiff's claims are typical of the class and there are common issues of fact.

12.     These issues include, but are not limited to whether Defendant has exercised discretion in the interpretation of said policies in a manner that violates the law.

13.     A class action is a superior means of adjudicating this controversy. Indeed, common issues of fact and questions of law predominate over individual issues. Here, the common question is whether Defendant is inappropriately exercising discretion to interpret the terms of the policies.

14.     Plaintiff and her counsel are competent to represent the class. She seeks certification under Rule 23 (b)(1), (b)(2), and (b)(3).

15.     As direct result of the exercise of inappropriate discretion, Plaintiff and the Class have been denied benefits.

16.     Plaintiff is therefore entitled to an Order certifying the Class, Ordering Unum to re-evaluate claims in accordance with Arkansas law, for an Order reinstating benefits in the interim, and for an Order requiring Unum to discontinue these illegal claims practices.

WHEREFORE, Plaintiff prays for an order awarding her: back benefits, current benefits, future benefits, pre-judgment interest, attorney's fees, statutory penalties, punitive damages exceeding $500,000.00, costs for a trial by jury, for an Order certifying the Class, for an Order reinstating benefits in the interim, and for an Order requiring

3

Unum to discontinue these illegal claims practices, and all other appropriate and proper relief.

Respectfully submitted,

Paul Pfeifer AR Bar #98121
Pfeifer Law Firm, P.A.
111 Center Street, Suite 1200
Little Rock, AR 72201
501-374-4440 (tel.)
501-374-4446 (fax)

And

Luther Sutter AR Bar #95031
Sutter and Gillham P.L.L.C.
Attorneys at Law
P. O. Box 2012
Benton, AR 72018
501/315-1910; Facsimile 501/315-1916
Attorneys for the Plaintiff

By: _____
Paul Pfeifer, Ark. Bar No. 98121

4

UP  CAEPFAXNNNH003      8/18/2011 3:58:48 PM   PAGE    1/030    Fax Server

AMENDMENT NO.  29

This amendment forms a part of Group Policy No. 300421 issued to
University of Arkansas   , the Policyholder.

This policy is changed by the addition or deletion of the pages listed below.

| ADDITIONS | DELETIONS |
|---|---|
| L-PS-2  (10/1/2007) | L-PS-2  (8/1/2004) |

The effective date of these changes is October 1, 2007.  The changes only apply
to disabilities which start on or after the effective date.

The policy's terms and provisions will apply other than as stated in this amend-
ment.

Dated at Portland, Maine this 29th day of  October , 2007.

Unum Life Insurance Company of America
By

Secretary

If this amendment is unacceptable, please sign below and return this amendment
to Unum Life Insurance Company of America at Portland, Maine within 90 days
of October  29, 2007.
YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL
CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.

University of Arkansas
                Policyholder

By_____
Signature and Title of Officer

A4/jm

# EXHIBIT  A

Policyholder:  University of Arkansas

Policy Number:  300421

Policy Effective Date:  July 1, 1981

Premium Due Dates:  July 1 and the first day
of each following month.

**GROUP**

**LONG**

**TERM**

**DISABILITY**

**INSURANCE**

**POLICY**

**NON**

**PARTICIPATING**

Governing Jurisdiction:  ARKANSAS

Policy Anniversary:  January 1, 2007, and each
following January 1.

UNUM Life Insurance Company of America (referred
to as the Company) will pay the benefits provided
in this policy.  The Company makes this promise
subject to all of this policy's provisions.

The policyholder should read the policy specifications
carefully and contact the Company promptly with any
questions.

This policy is delivered in and governed by the laws of
the governing jurisdiction and to the extent applicable
by The Employee Retirement Income Security Act of 1974
(ERISA) and any amendments.

Signed for the Company at Portland, Maine on the
policy effective date.

_____          _____
Secretary                               President

UNUM Life Insurance Company of America

L-1 (1/1/2007)

## SECTION I - POLICY SPECIFICATIONS

1. **Description of Eligible Classes**

    Class 1    Eligible employees earning less than $20,000 per year and eligible employees earning in excess of $20,000 per year who do not elect Class 2 coverage

    Class 2    Eligible employees earning in excess of $20,000 per year who elect additional protection for annual earnings in excess of $20,000 per year

    Class 3    All Employees of Univeristy of Arkansas at Batesville

2. **Amounts of Insurance**

    **Class 1**

    a.  60% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits.

        Note: This benefit is subject to reductions for earnings as provided in the Monthly Benefit section of this policy.

    b.  The maximum monthly benefit is $1,000.

    **Class 2 and 3**

    a.  60% (benefit percentage) of basic monthly earnings not to exceed the maximum monthly benefit, less other income benefits.

        Note: This benefit is subject to reductions for earnings as provided in the Monthly Benefit section of this policy.

    b.  The maximum monthly benefit is $5,000.

    **All Classes**

    The minimum monthly benefit is the greater of:

    a.  $100.00; or

    b.  10% of the monthly benefit before deductions for other income benefits.

## SECTION I - POLICY SPECIFICATIONS (Continued)

3. **Maximum Benefit Period**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | To age 65 but not less than 60 months |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

4. **Elimination Period:** 180 days or the end of accumulated sick leave, whichever is later.

5. **Minimum Requirement for Active Employment:** 20 hours per week

6. **Definition of Basic Monthly Earnings**

   **For Physicians:**

   "Basic monthly earnings" means base pay only. It includes shift differential but does not include commissions, bonuses, overtime pay and any other extra compensation.

   **For all other employees:**

   "Basic monthly earnings" means the insured's monthly rate of earnings from the employer in effect just prior to the date disability begins.  It includes shift differential but does not include commissions, bonuses, overtime pay and other extra compensation.

7. **Waiting Period:**

   a. **Employees in an eligible class on or before the policy effective date:** None

   b. **Employees entering an eligible class after the policy effective date:** None

   The employee must be in continuous active employment in an eligible class during the specified waiting period.

L-PS-2 (10/1/2007)

## SECTIO }- POLICY SPECIFICATIONS (continued)

8. **Employee Contributions Required:**

   **Class 1 and 3**

      No

   **Class 2**

      Yes

   **Note:**   Coverage for which contributions are required applies only if proper enrollment is made and the required contributions are made.

9. **Divisions, Subsidiaries or Affiliated Companies Included**

   | Name | Location (City and State) |
   | --- | --- |
   | University of Arkansas For Medical Sciences | Little Rock, AR |
   | University of Arkansas of Little Rock | Little Rock, AR |
   | University of Arkansas at Monticello | Monticello, AR |
   | University of Arkansas at Pine Bluff | Pine Bluff, AR |
   | Razorback Foundation, Inc. | Fayetteville, AR |
   | Arts Center Council | Fayetteville, AR |
   | University of Arkansas Foundation, Inc. | Fayetteville, AR |
   | University of Arkansas at Batesville | Batesville, AR |

10. **Changes Effective**

    Subject to the Delayed Effective Date subsections, changes in insurance take effect immediately.

L-PS-3 (1/1/01)

## SECTION I - POLICY SPECIFICATIONS (continued)

Continuation of You: Insurance During Certain Abse.. es

| Type of Absence | Time Limit |
|---|---|
| Leave of Absence for Educational Purposes | Up to twelve months. |

Temporary Layoff    Up to twelve months.
or Leave of
Absence other
than Family and
Medical Leave
of Absence

Family and Medical.  UNUM will continue your
Leave of Absence    insurance in accordance
with your employer's Human
Resource policy on family
and medical leaves of
absence - as if you were
in active employment, if
the following conditions
are met:
1.  premiums are paid, and
2.  your employer has
approved your leave
in writing.

Coverage will be continued
for up to the greater of:
1.  the leave period required
by the federal Family and
Medical Leave Act of 1993,
and any amendments, or
2.  the leave period required
by applicable state law.

If coverage is not continued
during a family or medical
leave of absence, upon
your return to active
employment:
1.  no new waiting periods
will be applied,
2.  no new pre-existing
conditions exclusions will
be applied, and
3.  no evidence of insurability
will be required,
to reinstate the coverage in
effect on the date before the
leave began.

The time period in the Pre-
Existing Condition Exclusion

L-PS-4 (7/1/03)

## SECTION ) - POLICY SPECIFICATIONS (  )tinued)

will continue to run through
your family or medical
leave of absence.

**11. Discretionary Authority**

In making any benefits determination under this policy, the Company shall
have the discretionary authority both to determine an employee's eligibility
for benefits and to construe the terms of this policy.

SECTIO.  } POLICY SPECIFICATIONS (.  )nued)

**Initial Premium Rates**

**Class 1**

Monthly Premium:   .15% of total covered payroll per month.

**Class 2**

Monthly Premium:   .29% of total covered payroll in excess of $1,667 per month.

"Total covered payroll" is the total amount of basic monthly earnings for which all employees are insured under this policy.

PS-RI-1

## SECTION II - DEFINITIONS

For the purposes of this policy:

"Active employment" means the employee must be working:

1. for the employer on a full-time basis and paid regular earnings (temporary or seasonal employees are excluded);

2. at least the minimum number of hours shown in the policy specifications; and either

3. at the employer's usual place of business; or

4. at a location to which the employer's business requires the employee to travel.

"Basic monthly earnings"--As defined in the policy specifications.

"Certificate" means a written statement prepared by the Company including all riders and supplements, if any, setting forth a summary of:

1. the insurance benefits to which an employee is entitled;

2. to whom the benefits are payable; and

3. limitations or requirements that may apply.

"Disability" or "disabled" - see last page of Section II.

"Disability benefits," when used with the term retirement plan, means money which:

1. is payable under a retirement plan due to disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the disability had not occurred. (If the payment does cause such a reduction, it will be deemed a retirement benefit as defined in this policy.)

"Eligibility date" means the date an employee becomes eligible for insurance under this policy. Classes eligible are shown in the policy specifications.

"Elimination period" means a period of consecutive days of disability for which no benefit is payable. The elimination period is shown in the policy specifications and begins on the first day of disability.

Note: If disability stops during the elimination period for any 30 (or less) days, then the disability will be treated as continuous. But days that the insured is not disabled will not count toward the elimination period.

"Employee" means a person in active employment with the employer.

L-DEF-1 (8/1/2004)

SE ,ÒN II - DEFINITIONS (continu )

"Employer" means the policyholder and includes any division, any subsidiary .or any affiliated company named in the policy specifications.

"Evidence of insurability" means a statement or proof of an employee's medical history upon which acceptance for insurance will be determined by the Company.

"Grace period" is the 45 days following a premium due date during which premium payment may be made.

"Gross monthly benefit" means the insured's benefit amount before any reduction for other income benefits and earnings.

"Home office" means the UNUM Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122.

"Indexed pre-disability earnings" means the insured's basic monthly earnings in effect just prior to the date his disability began adjusted on the first anniversary of benefit payments and each following anniversary. Each adjustment will be based on the lesser of 10% or the current annual percentage increase in the Consumer Price Index.

Note: The Consumer Price Index (CPI-W) is published by the U. S. Department of Labor. The Company reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

"Initial enrollment period" means one of the following periods during which an employee may first make written application for coverage under this policy:

1.  for an employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the policyholder and the Company.

2.  for an employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his eligibility date.

"Injury" means bodily injury resulting directly from an accident and independently of all other causes. The injury must occur and disability must begin while the employee is insured under this policy.

"Insured" means an employee insured under this policy.

"Male pronoun" whenever used includes the female.

"Monthly Benefit" means the amount payable by the Company to the disabled insured.

## S.   ON II - DEFINITIONS (conti    )

"Physician" means a person who is:

1.   operating within the scope of his license; and either

2.   licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

3.   legally qualified as a medical practitioner and required to be re-cognized, under this policy for insurance purposes, according to the insurance statutes or the insurance regulations of the gov-erning jurisdiction.

It will not include an employee or his spouse, daughter, son, father, mother, sister or brother.

"Policy Specifications" is the document showing the eligible classes, the amounts of insurance and other relevant information pertaining to the plan of insurance applied for by the policyholder. This document, designated Section I, is attached to and is part of this policy.

"Policy Year" means July 1 through June 30.

"Retirement benefits", when used with the term retirement plan, means mo-ney which:

1.   is payable under a retirement plan either in a lump sum or in the form of periodic payments;

2.   does not represent contributions made by an employee; and

Note: payments which represent employee contributions are deemed to be received over the employee's expected remaining life regardless of when such payments are actually received.

3.   is payable upon:

a.   early or normal retirement; or

b.   disability if the payment does reduce the amount of money which would have been paid at the normal re-tirement age under the plan if the disability had not occurred.

"Retirement plan" means a plan which provides retirement benefits to em-ployees and which is not funded wholly by employee contributions. The term shall not include a profit-sharing plan, a thrift plan, an individual retire-ment account (IRA), a tax sheltered annuity (TSA), a stock ownership plan, or a non-qualified plan of deferred compensation.

L-DEF-3

SECTION II - DEFINITIONS (contin  )

Note:     "Employer's retirement plan" is deemed to include any re-
          tirement plan:

          1.  which is part of any federal, state, county, municipal
              or association retirement system; and

          2.  for which the employee is eligible as a result of em-
              ployment with the employer.

"Sickness" means illness or disease.  It will include pregnancy unless ex-
cluded in the General Exclusions section of this policy.  The disability must
begin while the employee is insured under this policy.

"Waiting period," as shown in the policy specifications, means the continuous
length of time an employee must serve in an eligible class to reach his el-
igibility date.

L-DEF-4

SEC I I O N II - DEFINITIONS (continued,)

"Disability" and "disabled" mean that because of injury or sickness:

1.   the insured cannot perform each of the material duties of his regular
      occupation; and

2.   after benefits have been paid for 24 months, the insured cannot perform
      each of the material duties of any gainful occupation for which he is
      reasonably fitted by training, education or experience; or

3.   the insured, while unable to perform all of the material duties of his
      regular occupation on a full-time basis, is:

      a.   performing at least one of the material duties of his regular oc-
            cupation or another occupation on a part-time or full-time basis;
            and

      b.   earning currently at least 20% less per month than his indexed
            pre-disability earnings due to that same injury or sickness.


For employees employed as airplane pilots, co-pilots and crew members

"Disability" and "disabled" mean that because of injury or sickness the insured
cannot perform each of the material duties of any gainful occupation for which
he is reasonably fitted by training, education or experience.  The loss of a pilot's
license for any reason does not, in itself, constitute disability.

## SECTION - ELIGIBILITY AND EFFECTIVE DATES

### A. ELIGIBLE CLASSES

The classes eligible for insurance are shown in the policy specifications.

### B. ELIGIBILITY DATE

An employee in an eligible class will be eligible for insurance on the later of:

1. the policy effective date; or

2. the day after the employee completes the waiting period.

### C. ENROLLMENT

An employee may enroll or change coverage only during an enrollment period as follows.

1. **Initial Enrollment Period**

   During an employee's initial enrollment period:

   a. he will automatically be enrolled in Class 1.  But he may choose to enroll in another class; and

   b. an employee who is eligible for insurance on the policy effective date may apply for a coverage option for the first policy year.

   c. an employee who becomes eligible for insurance after the policy effective date may apply for a coverage option for the policy year in which he is first eligible.

2. **Rehired Employees**

   If a former employee is rehired by the employer within the same policy year that his employment terminated he will be insured for the same plan of insurance that was in effect for him on the date his employment terminated.

3. **Changes in Coverage**

   An employee may change his coverage at any time by:

   a. increasing his coverage; or

   b. decreasing his coverage.

   In the case of a. above, the employee must submit an application and evidence of insurability to the Company for approval. This will be at the employee's expense.

### D. EFFECTIVE DATE OF INSURANCE

1. Insurance will be effective at 12:01 a.m. on the day determined as follows, but only if the employee's written application for insurance is:

   a. made with the Company through his employer; and

   b. on a form satisfactory to the Company.

L-EFF-1

### SECTION III -    GIBILITY AND EFFECTIVE D    S (continued)

2.  An employee will be insured for non-contributory coverage on his eligibility date.

3.  An employee will be insured for contributory coverage on the latest of these dates:

    a.  the employee's eligibility date if he applies before that date; or

    b.  the date the employee applies if he does it on or before the 31st day after his eligibility date.

    c.  the date the Company gives its approval, if the employee:

        i.  applies more than 31 days after his eligibility date; or

        ii.  terminated his insurance while continuing to be eligible; or

        iii.  applies for Class 2 coverage if he was previously enrolled in Class 1.

4.  Delayed Effective Date For Insurance

    The effective date of any initial, increased or additional insurance will be delayed for an employee if he is not in active employment because of a disability on the date that insurance would otherwise be effective. The initial, increased or additional insurance will start on the date that person returns to active employment.

L-EFF-2

## SECTION IV – BENEFITS

**DISABILITY**

When the Company receives proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period.  The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

1.   disability; and

2.   regular attendance of a physician.

The proof must be given upon request and at the insured's expense.

The monthly benefit will not:

1.   exceed the insured's amount of insurance; nor

2.   be paid for longer than the maximum benefit period.

The amount of insurance and the maximum benefit period are shown in the policy specifications.

**MONTHLY BENEFIT**

**Class 1**

To figure the amount of monthly benefit:

1.   Take the lesser of:

    a.   60% of the insured's basic monthly earnings; or

    b.   the amount of the maximum monthly benefit shown in the policy specifications; and

2.   Deduct other income benefits, shown below, from this amount.

**Class 2**

To figure the amount of monthly benefit:

1.   Take the lesser of:

    a.   60% of the insured's basic monthly earnings; or

    b.   the amount of the maximum monthly benefit shown in the policy specifications; and

2.   Deduct other income benefits, shown below, from this amount.

## ⸫ ˸ ION IV – BENEFITS (continu )

But, if the insured is earning more than 20% of his indexed pre-disability earnings in his regular occupation or another occupation, then the monthly benefit will be figured as follows:

1. During the first 12 months, the monthly benefit will not be reduced by any earnings until the gross monthly benefit plus the insured's earnings exceed 100% of his indexed pre-disability earnings.  The monthly benefit will then be reduced by that excess amount.

2. After 12 months, the following formula will be used to figure the monthly benefit.

$$(A \text{ divided by } B) \times C$$

A = The insured's "indexed pre-disability earnings" minus the insured's monthly earnings received while he is disabled.
B = The insured's "indexed pre-disability earnings".
C = The benefit as figured above.

The benefit payable will never be less than the minimum monthly benefit shown in the policy specifications.

Proof of the insured's monthly earnings must be given to the Company on a quarterly basis.  Benefit payments will be adjusted upon receipt of this proof of earnings.

## OTHER INCOME BENEFITS

Other income benefits means those benefits as follows.

1. The amount for which the insured is eligible under:

   a. Workers' or Workmen's Compensation Law;

   b. occupational disease law; or

   c. any other act or law of like intent.

2. The amount of any disability income benefits for which the insured is eligible under any compulsory benefit act or law.

3. The amount of any disability income benefits for which the insured is eligible under:

   a. any other group insurance plan;

   b. any governmental retirement system as a result of his job with the employer.

4. The amount of disability benefits and/or retirement benefits received by the insured under the employer's retirement plan.

   As used here, "received" does not include any amount rolled over or transferred to any eligible retirement plan as that term is defined in

L-BEN-2

. TION IV - BENEFITS (continu     )

Section 402 of the Internal Revenue Code and any future amendments which affect the definition of an eligible retirement plan.

5.  The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or The Quebec Pension Plan, or any similar plan or act, as follows:

    a.  disability benefits for which:

       i.  the insured is eligible; and

       ii.  his spouse, child or children are eligible because of his disability; or

    b.  retirement benefits received by:

       i.  the insured; and

       ii.  his spouse, child or children because of his receipt of the retirement benefits.

These other income benefits, except retirement benefits, must be payable as a result of the same disability for which this policy pays a benefit.

Item 5.b. will not apply to disabilities which begin after age 70 for those insureds already receiving Social Security retirement benefits while continuing to work beyond age 70.

Benefits under item 5.a above will be estimated if such benefits:

1.  have not been awarded; and

2.  have not been denied; or

3.  have been denied and the denial is being appealed.

The monthly benefit will be reduced by the estimated amount.  But, these benefits will not be estimated provided that the insured:

1.  applies for benefits under item 5.a; and

2.  requests and signs the Company's Agreement Concerning Benefits.

This agreement states that the insured promises to repay the Company any overpayment caused by an award received under item 5.a.

If benefits have been estimated, the monthly benefit will be adjusted when the Company receives proof:

1.  of the amount awarded; or

2.  that benefits have been denied and the denial is not being appealed.

In the case of 2. above, a lump sum refund of the estimated amounts will be made.

"Law," "plan," or "act" means the initial enactment and all amendments.

L-BEN-3

## TION IV - BENEFITS (contint    )

### COST OF LIVING FREEZE

After the first deduction for each of the other income benefits, the monthly benefit will not be further reduced due to any cost of living increases payable under these other income benefits.

### LUMP SUM PAYMENTS

Other income benefits which are paid in a lump sum will be prorated on a monthly basis over the time period for which the sum is given. If no time period is stated, the sum will be prorated on a monthly basis over the insured's expected lifetime as determined by the Company.

### TERMINATION OF DISABILITY BENEFITS

Disability benefits will cease on the earliest of:

1.  the date the insured is no longer disabled;

2.  the date the insured dies;

3.  the end of the maximum benefit period;

4.  the date the insured's current earnings exceed 80% of his indexed pre-disability earnings.

### RECURRENT DISABILITY

"Recurrent disability" means a disability which is related to or due to the same cause(s) of a prior disability for which a monthly benefit was payable.

A recurrent disability will be treated as part of the prior disability if, after receiving disability benefits under this policy, an insured:

1.  returns to his regular occupation on a full-time basis for less than six months; and

2.  performs all the material duties of his occupation.

Benefit payments will be subject to the terms of this policy for the prior disability.

If an insured returns to his regular occupation on a full-time basis for six months or more, a recurrent disability will be treated as a new period of disability. The insured must complete another elimination period.

In order to prevent overinsurance because of duplication of benefits, benefits payable under this Recurrent Disability provision will cease if benefits are payable to the insured under any other group long term disability policy.

L-BEN-4

## SECTION IV - BENEFITS (continued)

### ONE YEAR SURVIVOR INCOME BENEFIT*

The Company will pay a benefit to the eligible survivor when proof is received that an insured died:

1. after disability had continued for six or more consecutive months; and

2. while receiving a monthly benefit.

This benefit will be paid monthly for one year from the date of death.   The amount will be equal to 66 2/3% of the insured's last monthly benefit.

If payment becomes due to the insured's children, payment will be made to:

1. the children; or

2. a person named by the Company to receive payments on the children's behalf. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

"Eligible survivor" means the insured's spouse, if living, or if the spouse died before the final monthly benefit is paid, then, the insured's children who are under age 25.

"Last monthly benefit" means the monthly benefit paid to the insured immediately prior to his death but not including any adjustment for earnings.

### GENERAL EXCLUSIONS

This policy does not cover any disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries;

3. active participation in a riot.

### PRE-EXISTING CONDITION EXCLUSION

This policy will not cover any disability:

1. caused by, contributed to by, or resulting from a pre-existing condition; and

2. which begins in the first 12 months after an insured's effective date.

A "pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to the insured's effective date.

*Special

L-BEN-5 (1/1/2007)

## SECTION IV - BENEFITS (conti. d)

### MENTAL ILLNESS LIMITATION

Benefits for disability due to mental illness will not exceed 24 months of monthly benefit payments unless the insured meets one of these situations.

1.  The insured is in a hospital or institution at the end of the 24-month period. The monthly benefit will be paid during the confinement.

    If the insured is still disabled when he is discharged, the monthly benefit will be paid for a recovery period of up to 90 days.

    If the insured becomes reconfined during the recovery period for at least 14 days in a row, benefits will be paid for the confinement and another recovery period up to 90 more days.

2.  The insured continues to be disabled and becomes confined:

    a.  after the 24-month period; and

    b.  for at least 14 days in a row.

    The monthly benefit will be payable during the confinement.

The monthly benefit will not be payable beyond the maximum benefit period.

"Hospital" or "institution" means facilities licensed to provide care and treatment for the condition causing the insured's disability.

"Mental illness" means mental, nervous or emotional diseases or disorders of any type.

L-BEN-6 (1/1/2007)

SL    DN V - TERMINATION PROV.   IS

## A. TERMINATION OF EMPLOYEE'S INSURANCE

An employee will cease to be insured on the earliest of the following dates:

1. the date this policy terminates;

2. the date the employee is no longer in an eligible class;

3. the date the employee's class is no longer included for insurance;

4. the last day for which any required employee contribution has been made;

5. the date employment terminates. Cessation of active employment will be deemed termination of employment, except:

    a. the insurance will be continued for a disabled employee during:

        i. the elimination period; and

        ii. while benefits are being paid.

    b. the employer may continue the employee's insurance by paying the required premiums, subject to the following:

        i. Insurance may be continued for the time shown in the policy specifications for an employee:

            a) temporarily laid off; or

            b) given leave of absence.

        ii. The employer must act so as not to discriminate unfairly among employees in similar situations.

## B. TERMINATION OF POLICY

1. Termination of this policy under any conditions will not prejudice any payable claim which occurs while this policy is in force.

2. If the policyholder fails to pay any premium within the grace period, this policy will automatically terminate at 12:00 midnight of the last day of the grace period. The policyholder may terminate this policy by advance written notice delivered to the Company at least 31 days prior to the termination date. But, this policy will not terminate during any period for which premium has been paid. The policyholder will be liable to the Company for all premiums due and unpaid for the full period for which this policy is in force.

3. The Company may terminate this policy on any premium due date by giving written notice to the policyholder at least 31 days in advance if:

    a. the number of employees insured is less than 10; or

    b. less than 100% of the employees eligible for any noncontributory insurance are insured for it; or

    c. less than 75% of the employees eligible for any contributory insurance are insured for it; or

L-TERM-1

## SECTION V - TERMINATION PROVISIONS

    d.  the policyholder fails:

        i.   to furnish promptly any information which the Company may reasonably require; or

        ii.  to perform any other obligations pertaining to this policy.

  4.  Termination may take effect on an earlier date when both the policyholder and the Company agree.

### C.  TERMINATION OF CLASS

  1.  The Company reserves the right to set a participation requirement for each class of coverage and to terminate that class if those participation requirements are not met.

### D.  CONVERSION PRIVILEGE

When an individual's insurance under this policy terminates because he ends employment with the policyholder, he may obtain converted disability income coverage without medical evidence of insurability.  But the individual must have been insured for at least twelve consecutive months just before his insurance under this policy terminated.  These twelve months will be considered to include the time the individual was insured for group long term disability under both this policy and the one it replaced, if any.

The conversion privilege is not available to any individual:

  1.  whose insurance under this policy terminates for any of the following reasons:

    a.  this policy terminates;

    b.  this policy is amended to exclude from coverage the class of employees to which the individual belongs;

    c.  the individual no longer belongs to a class of employees eligible for coverage under this policy;

    d.  the individual retires (when the individual receives payment from any employer's retirement plan as recognition of past services or has concluded their working career);

    e.  the individual failed to pay any required premium;

  2.  who is or becomes insured for long term disability insurance under another group plan within 31 days after termination;

  3.  who is disabled under the terms of this policy;

  4.  who recovers from a disability and does not return to work for the policyholder; or

  5.  who is on a leave of absence.

The conversion coverage must be applied for and the first quarterly premium paid within 31 days after termination of insurance under this policy.

**L-TERM-2 (1/1/95)**

UP CAEPFAXNNNH003      8/19/2011 3:58:49 PM   PAGE   24/030    Fax Server

## SECTION V - TERMINATION PROVISIONS

The Company governs the form of coverage, the benefits and the amounts.
The benefits and amounts may differ from those under this policy.

L-TERM-3 (1/1/95)

## SEC    ) VI - GENERAL POLICY PR(    )ONS

### A. STATEMENTS

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1. the policyholder in applying for this policy will make it void unless the representation is contained in the application; or

2. any employee in applying for insurance under this policy will be used to reduce or deny a claim unless a copy of the application for insurance is or has been given to the employee.

### B. COMPLETE CONTRACT - POLICY CHANGES

1. This policy is the complete contract. It consists of:

   a. all of the pages;

   b. the policy specifications;

   c. the attached application of the policyholder;

   d. each employee's application for insurance (employee retains his own copy).

2. This policy may be changed in whole or in part. Only an officer or a registrar of the Company can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. Any other person, including an agent, may not change this policy or waive any part of it.

### C. EMPLOYEE'S CERTIFICATE

The Company will provide a certificate to the policyholder for delivery to each insured. If the terms of a certificate and this policy differ, this policy will govern.

### D. FURNISHING OF INFORMATION - ACCESS TO RECORDS

1. The employer will furnish at regular intervals to the Company:

   a. Information relative to employees:

      i. who qualify to become insured;

      ii. whose amounts of insurance change; and/or

      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The employer's records which, in the opinion of the Company, have a bearing on the insurance will be opened for inspection by the Company at any reasonable time.

2. Clerical error or omission will not:

L-GPP-1

SECҭ    )VI - GENERAL POLICY PRO     ⅅNS

    a.  deprive an employee of insurance;

    b.  affect an employee's amount of insurance; or

    c.  effect or continue an employee's insurance which otherwise would not be in force.

## E.  MISSTATEMENT OF FACTS

If relevant facts about any employee were not accurate:

1.  a fair adjustment of premium will be made; and

2.  the true facts will decide if and in what amount insurance is valid under this policy.

## F.  NOTICE AND PROOF OF CLAIM

1.  **Notice**

    a.  Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible.  If that is not possible, the Company must be notified as soon as it is reasonably possible to do so.

    b.  When the Company has the written notice of claim, the Company will send the insured its claim forms.  If the forms are not received within 15 days after written notice of claim is sent, the insured can send the Company written proof of claim without waiting for the form.

2.  **Proof**

    a.  Proof of claim must be given to the Company.  This must be done no later than 90 days after the end of the elimination period.

    b.  If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible.  But proof of claim may not be given later than one year after the time proof is otherwise required.

    c.  Proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof.

    d.  The proof must cover:

        i.  the date disability started;

        ii.  the cause of disability; and

        iii.  how serious the disability is.

L-GPP-2

SECT )VI - GENERAL POLICY PRO    ONS

## G. EXAMINATION

The Company, at its own expense, will have the right and opportunity to have an employee, whose injury or sickness is the basis of a claim:

1. examined by a physician, other health professional, or vocational expert of its choice; and/or

2. interviewed by an authorized Company representative.

## H. LEGAL PROCEEDINGS

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after proof of claim has been given; nor

2. more than 3 years after the time proof of claim is required.

## I. TIME OF PAYMENT OF CLAIMS

When the Company receives proof of claim, benefits payable under this policy will be paid monthly during any period for which the Company is liable.

## J. PAYMENT OF CLAIMS

All benefits are payable to the employee.   But if a benefit is payable to an employee's estate, an employee who is a minor, or an employee who is not competent, the Company has the right to pay up to $1,000 to any of the employee's relatives whom the Company considers entitled.   If the Company pays benefits in good faith to a relative, the Company will not have to pay such benefits again.

## K. WORKERS' OR WORKMEN'S COMPENSATION

This policy is not in lieu of, and does not affect, any requirement for coverage by workers' or workmen's compensation insurance.

## L. AGENCY

For all purposes of this policy, the policyholder acts on its own behalf or as agent of the employee.   Under no circumstances will the policyholder be deemed the agent of the Company.

## SECTION VII - PREMIUMS

### A. PREMIUM RATES

The initial premium is determined on the basis of the rates shown in the policy specifications.

The Company may establish new rates for the computation of all future premiums as well as the one then due:

1. when the terms of this policy are changed;

2. when a division, subsidiary, or affiliated company is added to this policy; or

3. for reasons other than 1. and 2. above, such as, but not limited to a change in factors bearing on the risk assumed. But, the rates may not be changed within the first 12 months following the policy effective date.

No premium may be increased unless the Company notifies the employer at least 31 days in advance of the increase. Premium increases may take effect on an earlier date when both the Company and the employer agree.

### B. PAYMENT OF PREMIUMS

1. Premium payment calculations:

   a. will be based on the coverage provided under this policy; and

   b. are determined by the covered payroll as shown in the policy specifications.

2. All premiums due under this policy, including adjustments, if any, are payable by the employer on or before their respective due dates at the Company's home office. The due dates are specified on the first page of this policy.

3. Premiums payable to the Company will be paid in United States dollars.

4. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

5. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only and will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of Employee's Insurance" section of this policy.

6. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a pro rata adjustment on the next premium due date.

7. Except for fraud, premium adjustments, refunds or charges will be made for only:

   a. the current policy year; and

   b. the prior policy year.

L-PREM-1

UP CAEPFAXNNNH003     8/19/2011 3:58:49 PM   PAGE   29/030     Fax Server

)SECTION VII - PREMIUMS         )

## C.  WAIVER OF PREMIUM

**Premium payments for an employee are waived during any period for which
benefits are payable.  Premium payments may be resumed following a period
during which they were waived.**

L-PREM-2

Notice of Required Information
Arkansas Act 197

Dear Policyholder:

We are required by Arkansas Act 197 to include the addresses and telephone
numbers of the Insurance Department and the office where this policy is serviced.

Insurance
Department:              Arkansas Insurance Department
                         Consumer Services Division
                         400 University Tower Building
                         Little Rock, Arkansas 72204
                         Telephone:  (501) 371-1813

Service
Office:                  UNUM
                         850 Lake Ridge Blvd.
                         Suite 208
                         Memphis, Tennessee 38119
                         Telephone:  (901) 683-8680



CERTIFIED MAIL

7004 1350 0000 9139 3504

US POSTAGE PITNEY BOWES
$ 013.50⁰
02 1P
0000801482  OCT 13 2014
MAILED FROM ZIP CODE 72201

Paul Pfeifer
Pfeifer Law Firm, P.A.
111 Center Street, Suite 1200
Little Rock, AR 72201

CERTIFIED MAIL/RETURN RECEIPT REQUESTED
RESTRICTED DELIVERY
Corporation Service Company
Agent of Service for
UNUM Life Insurance Company of America
300 Spring Building, Suite 900
300 South Spring Street
Little Rock, AR  72201